GRAND ISLE,
*January,*
1843.

JOSEPH MOTT *v.* GILES HARRINGTON.

*( In Chancery. )*

Mott
*v.*
Harrington.

A master or commissioner is not obliged to make a special report, unless by direction of the court. Nor is he to report evidence.

The chancellor is not, on exceptions to the report, to review the proceedings of the master in relation to an account, or the items thereof. Nor will the supreme court, on appeal, review the decisions of the master on the evidence before him.

When a master was specially appointed, and the parties had agreed, pre-. viously, to refer the subject to him, on account of his knowledge of the subject in controversy, and it had been agreed that he might give an ex-parte deposition, and send it to one of the parties, it cannot be made an exception to his report, that he had given such deposition.

The supreme court will rarely, if ever, alter a decree of the chancellor on the subject of cost alone.

APPEAL from a decree of the court of chancery.

This was the case, originally, of a bill brought by the orator against the defendant, in which he alleged that in the year 1832, he conveyed to the defendant lots No. 49, 50, and 51, in the second range of lots in the town of Alburgh, and that the defendant at the same time executed to the orator, a bond, with a condition that he would reconvey the said lots to the orator, upon his paying the defendant the just charges he then had, or might thereafter have, as an attorney and solicitor of the orator in certain suits at law, and in chancery, and all bail bonds and executions in such suits, and also all claims of Heman Allen of Burlington, which were then due or might thereafter become due to him as attorney and solicitor of the orator in said suits; that he had paid to said Allen the amount of his claim, and tendered to the defendant $260 in satisfaction of his claim &c.; and praying that an account might be taken of the defendant's claims, and that he might be decreed to convey said lots of land to the orator, on payment of such sum as might in equity be found due.

The defendant in his answer admitted the execution of the deed and bond specified in the orator's bill, but alleged that it had been agreed between him and the orator that if he, the defendant would commence certain suits at law and in chancery, against the orator's sons, for the recovery of certain real estate, the orator would give him one half of

the land recovered, and that, having commenced such suits and obtained for the orator the said lots No. 49, 50 and 51, the orator thereupon conveyed to him said lots for the purpose specified in the bill, and also to carry into effect said agreement to give defendant half the land recovered,—and insisting that he was entitled to be paid his costs and charges against the orator, and also to hold one half of said land.

The case was heard by the supreme court sitting as a court of chancery, at the January term 1840, of said court in the county of Grand Isle, when the court decided that the orator should be let in to redeem the premises ; and it was ordered that it be referred to a master to take an account, and ascertain the sum due from the orator to the defendant. See report of the case, 12 Vt. R. 199.

Heman Allen, of Burlington, was, thereupon, appointed a special commissioner for that purpose, who at the May term, 1840, of the court of chancery for the county of Grand Isle, made his report, in which, after setting forth the items of account allowed by him to the defendant, he proceeded to say :

'The commissioner, of all the accounts and claims pre-
' sented by the said Harrington against the said Mott, has,
' as above exhibited, allowed in favor of the said Harrington,
' the sum of *five hundred and thirty nine dollars and sixty
' one cents*, being justly due him from said Mott.

' In the course of the trial, the counsel for Joseph Mott
' called for the original book of entries and dockets of the
' said Harrington, and objected to the further proceeding in
' the hearing, until they should be exhibited in court, but as
' the books called for were not in court, but at Alburgh, and
' from the reading of the accounts of the said Harrington,
' the commissioner considered it not indispensably necessary
' to the investigation of the claims, that the books and dock-
' ets should be produced, in evidence, he, thereupon, over-
' ruled the objection, and allowed the parties to proceed.

' The counsel for the plaintiff further objected to the al-
' lowance of the three last items of the account, upon the
' ground that they did not come within the decretal order of
' the court, nor within the commission ; but the commission-
' er overruled the objection, and allowed the three items as
' above.

'Objection was made by the orator to each and every 'item of the defendant's account."

Among the papers used as evidence before the commissioner, and referred to by him, and made part of his report, were the deposition of the said commissioner, taken in December, 1838, the answer of the defendant in this suit, with his account thereto annexed, and his account delivered to the orator before the commencement of the suit; and also the depositions of Tabor J. Sewall, and Clarinda Mott.

Upon the coming in of this report the orator filed his petition for its suppression, therein stating that the said Heman Allen was appointed commissioner upon the suggestion of the defendant; that previous to his appointment he had, at the solicitation of the defendant, given his deposition, *exparte*, in relation the defendant's services as solicitor for the orator in said suit in chancery, in which he had expressed an opinion favorable to the claim of the defendant; that, at the time of the appointment, the defendant had said deposition in his hands, and concealed the fact of its existence from the orator and his counsel; that the deposition was not filed in court, but was first produced on the trial before said commissioner, and that the orator and his counsel were, until then, wholly ignorant of its existence; that the defendant, by his management, procured the said Allen to be appointed as commissioner to take the account; that, upon the trial before the commissioner, the orator requested him to make a special report, stating the grounds of objection made by the orator to the defendant's account, which he refused to do; and that the defendant exhibited to the commissioner an account in many respects different from any he had ever before pretended to have against the orator.

The orator also filed exceptions to the report upon the following grounds: 1. That the commissioner neglected to return to the court the defendant's account, on which he adjudicated; 2. That he refused to order the production of the defendant's books and papers containing his charges; 3. That he allowed to defendant sundry sums of money as having been paid for the orator, without vouchers; 4. That he allowed a large sum for interest, without stating the grounds of allowance; 5. That the commissioner allowed many items which it was apparent from defendant's answer,

ought not to have been allowed; 6. That he allowed large sums for time spent in going to different places, without specifying how much time was spent, or what was done for the orator; 7. That he allowed a *gross sum of* $15, for amount of Harrington and Perrigo's account against orator, without giving any items of said account, or having any items before him, and with no evidence but the defendant's oath; 8. That the commissioner allowed the defendant a large sum on account of a subject-matter not submitted to him by the decretal order; 9. That the report was grossly partial and unjust, &c.

Upon the hearing before the chancellor on the petition and exceptions, it appeared that, previous to the 1st of January, 1839, the following agreement had been entered into between Smalley & Adams, solicitors for the orator, and the defendant, viz:

"It is agreed that the evidence of Heman Allen, Esq. 'may be taken at Washington, D. C., and sworn to before 'a justice of the peace, and by him transmitted to the de-'fendant, and be evidence in this cause. And the time for 'taking testimony is extended, by agreement, to the 1st of 'January, 1839."

Upon the hearing, Benjamin H. Smalley, one of the said solicitors, filed his affidavit, setting forth that the orator, from his great age and loss of memory was incapable of taking charge of said suit or giving directions in relation thereto, and that it had been managed by his agents, exclusively; that, at the time the court appointed Mr. Allen a commissoner, he, the deponent, had no knowledge that he had given any deposition, or any opinion in relation to said cause; that the defendant had, previous to said appointment, expressed to the deponent a wish that, if an account should be ordered by the court, the said Allen should be appointed to take the same, and that the deponent had, then, inquired of the defendant whether he had ever heard said Allen express any opinion on the subject, or had, by any means, ascertained his opinion upon it, and that the defendant assured the deponent that he did not know what said Allen's views were in regard to it; that the deponent attended at the hearing of the cause before the commissioner, and that the facts set forth in the orator's petition to suppress the report, were true,

according to his best knowledge and belief; that the first knowlege the deponent had of the deposition of Mr. Allen, was upon its production, by the defendant, as evidence, near the close of the examination before the commissioner; and that, at the trial before the commissioner, the defendant admitted that he had said deposition in his hands at, and before, the time when said Allen was appointed commissioner.

The deponent further stated his belief that it would appear by the defendant's books, if examined, that he had there charged the orator a much less sum than the commissioner had allowed the defendant in his report.

Henry Adams, also, the other of said solicitors, filed his affidavit, setting forth that he had no knowledge or suspicion, at the time said Allen was appointed commissioner, that he had given any deposition or opinion in relation to the cause, and had not heard or suspected the same, until after the hearing before the commissioner.

Upon the hearing, the chancellor accepted the report of the commissioner, and made a decree accordingly,—from which the orator appealed.

*Smalley & Adams*, for orator.

The appeal vacates the decree, and brings the whole case before this court; and every question arising therein is open to discussion.

I. As to the questions arising under the petition, and the exceptions.

1. The commissioner was incapable of trying the matter referred to him, having, previous to his appointment, expressed an opinion in favor of defendant's claims; which was well known to defendant. The appointment operated as a surprise upon the court and the orator, and ought to have been vacated. 2 Madd. Ch. P. 505.

2. The report of the commissioner ought to be set aside because he refused to state therein, the grounds of objection made by orator to defendant's claims, or to state any facts in relation to them, thereby taking upon himself to determine both the law and the facts, without the possibility of their being revised by the court. 6 Vt. R. 204; 5 Vt. R. 70; *Thompson* v. *Ames*, 9 Vt. R. 546; *Goodrich* v. *Drew*, 10 Vt. R. 137; Eq. Dig. 500.

Grand Isle,
*January*,
1843.

Mott
*v.*
Harrington.

GRAND ISLE,    3. The commissioner refused to state in his report whether
January,     there was, or was not, any agreement by orator to pay
  1843.
_____     interest, or whether there had been any demand of payment,
  Mott       thereby putting it out of orator's power to take the opinion
   v.        of the court upon the question whether the orator was bound
Harrington.
             to pay interest.   Jones v. Jones, 1 Jurist, 286 ; DuBelloix v.
Waterpark, 16 Com. L. R. 12; Woodbridge v. Proprietors
of Addison, 6 Vt. R. 204.

4. The commissioner refused to report the claims upon
which he adjudicated.   He should have done this that the
court might know whether he exceeded his authority, and
that it might determine whether the defendant would be
entitled to cost, or ought to pay cost, for making an un-
warrantable and oppressive demand.   1 Smith, 704 ; Bridg-
man's Dig. 162. sec. 6.

5. The commissioner exceeded his authority, and his
report should therefore be set aside.   Lewis v. Loxham,
1 Meri. R. 179; 2 Smith, 372.   He was authorized to take
the account annexed to the answer; but from his report, it
appears that he adjudicated upon such claims as the defend-
ant thought fit to present to him.   He says, "Of all the
accounts and claims presented, &c. he has allowed," &c.
implying that claims not allowed, were presented.   The
court cannot know what the disallowed claims are, and the
orator cannot be protected from future litigation in respect
to them.   The commissioner ought to have returned to the
court a statement of the claims presented, as well those dis-
allowed as allowed, that the court might judge of the char-
acter of the claims.   1 Bridg. Dig. p. 8. sec. 74; Field et
al v. Holland et al, 2 Cond. R. 285.

6. The commissioner refused to order the production of the
defendant's books and dockets containing his charges against
the orator.   The 8th section of the statute in relation to
the action of account, provides that no disputed account
shall be allowed upon the oath of the party, when it shall
appear that he had an original book of entries, unless such
book shall be produced upon reasonable request.   In this
case every item of the defendant's account was objected to.
What is reasonable request for the production of the book is
not matter of arbitrary discretion, but of law, to be deter-
mined from a consideration of the circumstances of each

case. *Prima facie*, the party making the request is enti-

tled to have the books produced. Facts may exist, to war-
rant a refusal to order their production ; but they should be
stated in the report, or it will be set aside. 6 Vt. R. 204 ;
5 Vt. R. 70 ; *Thompson* v. *Arms*, 5 Vt. R. 546 ; *Good-
rich* v. *Drew*, 10 Vt. R. 137 ; Eq. Dig. 500, sec. 6–7.

A strong reason for ordering the production of the books,
&c., is derived from the nature of the transaction, out of which
the account grew. It is an invariable rule in courts of law
and equity, that all transactions between attorney or solici-
tor, and client, are to be rigorously investigated. 2.Bridg.
Dig. 538, 541 ; 4 do. 460. In this case the defendant com-
menced acting as orator's solicitor and attorney, under an
unconscionable and illegal contract, and during the existence
of the professional relation, obtained an absolute convey-
ance from the orator, of a valuable real estate, which he has
used for the purpose of extortion and oppressive litigation.
Are the equitable powers of this court to be merged, in such
a case, in a commissioner of their own appointing ?

7. The commissioner omitted to state the grounds or
facts upon which he allowed many contested items in defen-
dant's account, of an extraordinary character. For example
—" Time spent in going to Burlington, St. Albans, and oth-
er places, looking up testimony, $50." In *Bowman* v.
*Earle*, 19 C. L. R. 266, it is said—" If in an action for an
attorney's bill, it appears that the plaintiff, in his bill, charges
for specific attendances on particular days, and besides that
charges a further sum for several attendances, the judge at
the trial, will direct the jury to deduct this latter sum from
the amount of the bill." 1 Bos. & P. 49 ; *Eddy* v. *Hine*, 3
Vt. R. 389 ; *McConnel* v. *Pike*, 3 Vt. R. 596.

8. The commissioner erred in allowing $15 for " Harrington
and Perrigo's account," without giving any items, and with-
out stating from what cause it arose. Cond. Ch. R. 244. .

II. The whole of the defendant's charges, for services as
solicitor and attorney for the orator, in the suits against his
sons, after the making of the agreement set forth in defen-
dant's answer, for the conveyance to him, of half the land
recovered, ought to be disallowed, being founded on an ille-
gal transaction, clearly amounting to champerty. The
defendant is not entitled to recover, in a court of law : 1

<div style="margin-left:margin">

GRAND ISLE,
January,
1843.

Mott.
v.
Harrington.

</div>

Saund. P. & E. 199 ; Com. Dig. D. Attorney B. 14 ; *Thurston* v. *Percival*, 1 Pick. 415 ; Hobart, 117 ;—nor in a court of chancery : *Jones* v. *Tripp*, 4 Cond. Ch. R. 151 ; *Williams* v. *Pigott*, 4 Cond. Ch. R. 281.

This is not like a class of cases in equity, where purchases have been made by a solicitor of his client, and, on application are set aside, as having been obtained during the existence of the relation of solicitor and client, but ordered to stand as security for what was due, at the time the conveyance was made. The distinction is, that this was a mortgage, made to enable the defendant to enforce an illegal agreement. All the services of orator in the suits against the Motts, grew out of an illegal compact, and, therefore, there was nothing due, for which the mortgage can be deemed a security.

III. The defendant, by insisting upon an unjust claim, has prevented the adjustment of his account, and, therefore, should not be allowed interest. *Du Belloix* v. *Waterpark*, 16 C. L. R. 12 ; 2 Stark. 786 ; *Gillet* v. *Hall*, 13 Cond. R. 426.

IV. The defendant, having made an oppressive use of a security obtained under peculiar circumstances, and compelled the orator to come to this court for relief, ought to pay the costs of the application, and all costs which he has occasioned. 4 Bridg. Dig. 161, 173 ; *Brinkerhoof* v. *Lansing*, 4 J. Ch. R. 65 ; *Burnet* v. *Sanders*, 4 J. Ch. R. 503 ; 3 Pow. on Mort. 993, in note ; *Nicholl* v. *Trustee of Huntington*, 1 J. Ch. R. 166 ; 1 Madd. C. P. 113 ; 2 Madd. 546 ; 3 Eq. Dig. 261 ; *Jones* v. *Loyd*, 10 Price, 62 ; *Elwood* v. *Pearce*, 21 C. L. R. 230, where more than a sixth was taken from an attorney's bill, and the court refused to allow him the costs of taxation.

*G. Harrington, per se.*

1. The finding of the chancellor on the petition, was upon matters of fact, and no error can be assigned. *Houghton* v. *Slack*, 10 Vt. R. 520 ; *Edgill* v. *Bennett*, 7 Vt. R. 534 ; 11 Vt. R. 233.

2. The taking and use of Allen's deposition is no ground for setting aside the report. It had been agreed by orator's counsel that it might be taken ; and it appeared by the affidavit of Tabor J. Sewal, that the parties agreed to refer the

matter to Mr. Allen. He was appointed commissioner for <span>Grand Isle,<br>January,<br>1843.</span> the reason that his previous knowledge of the matter better enabled him to do the parties justice.

<span>Mott<br>v.<br>Harrington.</span>

3. As to the non-production of defendant's books, it .is doubtful whether the commissioner had power to order their production. But if he had, it was discretionary with him, and his refusal is no ground of exception. *Hill* v. *Hogaboom*, 13 Vt. R. 141.

4. As to vouchers, they were unnecessary, provided the commissioner was satisfied. *Warden* v. *Johnson*, 11 Vt. R. 455.

5. Allowance of interest. In the absence of any proof, appearing in the report, or by evidence, that the case did not authorize the allowance of interest, the court will presume it did. *Stoughton* v. *Lynch*, 2 Johns. 213 ; 41 Rule in Ch.

6. The fifth, sixth, and seventh exceptions to the report, refer to matters of fact, which are proper subjects for the commissioner's determination ; and no proper objections were raised before the commissioner, on which exceptions could be founded. 3 Eq. Dig. 506, No. 17—507, No. 1, 6, 7, 9 ; 2 Smith, Ch. Pr. 164 ; New. Pr. 340.

7. The eighth exception is too general for the action of the court. Smith, Ch. Pr. 372 ; 3 Eq. Dig. 501, No. 8 & 9.

9. As to the objection to the defendant's claim, on the ground of its connexion with alleged champerty, he is not, for that cause, to lose his fair compensation for services and disbursements. 1 Eq. Dig. 293, No. 1—994, No. 7. 12. This objection was not made before the commissioner or chancellor.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This case comes before us on an appeal from a decree made by the- chancellor for the third judicial circuit. A decree has heretofore been made by this court, as a court of chancery, before the present system was adopted. The decree was made on a full hearing, and it was referred to Mr. Allen, a commissioner specially appointed, to take the account between the parties. The questions which were settled by that decree we consider as not open for discussion. The only question now before us, is, whether the order of the chancellor, accepting the report of Mr. Al-

len, and the decree thereon, shall be affirmed, reversed or altered. It is very obvious, that not every objection or argument which might have induced the chancellor to come to a different result, should be a ground with this court for reversing his decree. There are many orders made in the progress of a suit in chancery, depending on the discretion of the chancellor, and where he might, with propriety, have made a different order, which should not induce us to disturb his final decree in the premises. On an appeal, this court are to examine all the errors assigned, or found, in the decree of the chancellor, and make such a decree as justice shall require. Under a statute similar to ours, in the state of New-York, it has been holden that, on an appeal from chancery, to the court of errors, an objection not made by the party in the court below, cannot be made in the court of errors. Nor can a point, or question, be raised in the court of errors, for the first time, which, if it had been raised in the court below, might have been met and obviated. If the point, however, could not have been obviated by amendment, or proof, in the court below, and is fatal in the cause, the court of errors may examine into it. The party is not permitted to pass the court below, in silence, which would make this court, in fact, a court of original, instead of what it was intended, a court of appellate, jurisdiction.

In the case before us, objections are raised against the report of the commissioner, extrinsic, and which are presented by petition, and supported by affidavit, and intrinsic, arising on the report. The case of *Tyler* v. *Simmons,* 6 Paige, 127, decides that, in the state of New-York, irregularities in the proceedings of the master are not a proper subject of exception to the master's report; and this does not appear to be founded, solely, on rules of practice adopted in that state. But possibly the better practice under our system, would be for the chancellor to hear the objections, both extrinsic and intrinsic. When the case comes here, by appeal, the different objections would require a different consideration. The order of a chancellor founded on objections, not arising on the report, and which are to be proved by affidavit, or in any other way, directed by the chancellor, would rarely, if ever, present a case in which the order of the chancellor should be reversed. And this would afford a sufficient rea-

son why this decree should be affirmed, if there were no other objections to it, than those urged on the hearing of the petitioner.

As the practice under the present system of chancery jurisprudence, in this state, has not been settled by judicial construction, we have not been disposed, on this ground to pass by the objections urged on the petition of the orator, more especially as the same objections are mostly, raised on the report.

The first objection to the report is, that Mr. Allen, who was appointed a commissioner, had given an affidavit or deposition in the cause, in which he had expressed an opinion as to the merits of the controversy, that is, in relation to the nature of the controversy in which Mr. Harrington was employed as counsel. It appears, from an examination of the papers, that Mr. Allen was once employed by the orator, in conjunction with this defendant, in the prosecution of certain suits, in which the defendant claims a compensation. The orator must have known that Mr. Allen, from being associated with Mr. Harrington, must have some knowledge of the nature and extent of the services performed by Harrington, and whether he had been vigilant. The solicitor for the orator had agreed that the evidence of Mr. Allen might be taken at Washington, and sworn to before a justice of the peace, and by him transmitted to this defendant, and be evidence in this cause ; and furthermore, by the testimony of Tabor J. Sewall, it appears, that the orator was well apprised of Mr. Allen's acquaintance with the subject in controversy, between him and this defendant, and had agreed with the defendant to submit the controversy to the decision of Mr. Allen. There is no ground, therefore, for the orator to complain, at this time, of the appointment of Mr. Allen, or allege surprise at his having given a deposition. Much less is there any foundation for the allegation in the petition, that " the defendant, by his *management*, in this suit, procured the said Allen to be appointed as commissioner to take the account," &c.

The other exceptions contained in the petition, relate to the neglect and refusal of the master to make a special report, to state the facts on which he allowed the claim of interest, and to return the account presented by the defend-

ant. These objections may be considered with the exceptions taken directly to the report, and, in fact are enumerated among the special exceptions to it. These exceptions are nine in number, and are, that the commissioner neglected to return the defendant's account; refused to order the production of defendant's books; allowed sums without any vouchers; allowed interest without stating grounds; allowed many items which ought not to be allowed; allowed large sums for time spent, without specifying particulars; allowed an account in favor of Harrington and Perrigo on defendant's own statement; allowed sums on accounts not submitted, and that the report was grossly partial and unjust.

The two last exceptions are not supported by a reference to the proceedings before the master, nor by any proofs. The order to the master to ascertain the sum due to the defendant, required him to take into consideration the defendant's claim for taxable cost and fees in the suit mentioned; and there is no foundation for the allegation that the report is either partial or unjust.

The other exceptions may be embraced in two classes, and will be determined by ascertaining the power and duty of a master in chancery, as Mr. Allen was a special master in this case. They relate to the duty of the master in ordering the production of books and papers, in making a special report or statement of facts, and in stating the evidence in support of the different facts which he was required to find. The object of referring an account to a master is for convenience, to have a full investigation of facts, which could not well be had before the court, or, as was said in Bax, *exparte*, 2 Ves. 388, " because it is impossible for the court to take accounts originally, as that would so take up the time of the court, that justice could not be administered in other causes." Competent masters are appointed for this purpose, and the time and leisure which they can bestow upon the subject, enables them to investigate the facts, and state an account, more fully, and more for the benefit of the parties. The duty of a master is thus laid down by an eminent writer on the practice in chancery, Newland, 172, in which he is confirmed by Maddock and by Comyns, title Chancery,(W.2.) " The report of the master ought to be as succinct as may be, reserving the matter clearly for the judgment, and with-

out recital of the several points of the orders of reference, or the debates of counsel; nor is he to make a special report upon the importunity of counsel or of their clients, unless he is required by the court so to do, or his own judgment is satisfied with the propriety of it; and if he does, he is not to set forth the evidence with his opinion upon it, but only to state the bare fact, for the opinion of the court, in the same manner as in a special verdict." And when a master is required to ascertain a particular fact, he must draw the conclusion himself, and not report the evidence ; as when it was referred to a master to ascertain whether a person was dead, who reported that he had been absent fourteen years beyond seas and had not been heard from, it was referred back to the master to report whether the person was dead. *Lee* v. *Willock*, 6 Ves. 605. A rigid adherence to these rules, and a firmness in resisting the solicitation to state numerous facts and the evidence, would save our records from much useless matter, and the court the unnecessary labor of selecting the true points in controversy from a multitude of unimportant facts, and testimony, with which reports of masters, referees and auditors, are too frequently encumbered. A reference to a master would be worse than useless, if the whole investigation of the account, the facts in controversy, and the evidence in support of, and in opposition to the same were to be re-examined before the chancellor, and then again be heard and litigated, as to all the items of account, before this court, on appeal.

This view of the nature of a reference to a master to take an account, and his duty and power in taking the same, obviates the several objections raised to the report. The master did not require the production of the books and accounts, because he did not deem it necessary to stop the inquiry and have them produced, or that they were required for the purpose of determining the controversy. Had he deemed them necessary, or proper, for that purpose, undoubtedly he would have required their production. He did not make a special report or statement of facts, because he was not required so to do, by the decretal order, and was not satisfied, in his own judgment, of the propriety of making such report. He did not state the evidence upon which

GRAND ISLE,
January,
1843.
────────
Mott
v.
Harrington.

he was convinced of the several facts by him found, or the ground on which he made certain allowances, because it would not have been proper for him so to do. And this disposes of all the exceptions which have been made to the report.

On a view of the whole case we can see no grounds, either in the petition, or in the exceptions to the report, why it should not have been accepted by the chancellor. It is sufficiently concise, and reports the sum due to the defendant; and a more particular report was not required, by the order of the court, nor by the difficulty or intricacy of the case. The decree of the chancellor in accepting the report, was, therefore, correct; and neither he nor this court can, with propriety, enter into an investigation, or examination, of all the claims or accounts which the commissioner was required to adjust.

An objection is, next, taken to the decision of the chancellor in allowing to the defendant the cost in this suit. As a general rule, undoubtedly the mortgagee is entitled to his costs on having his security redeemed. He may, however, be deprived of his costs, and, when his conduct is vexatious, he may be ordered to pay cost. When he sets up an unjust defence, insisting upon his deed as an absolute purchase, he may be deprived of his costs. I should have been well satisfied, in this case, if no costs had been awarded to the defendant. This was, however, a case where the allowance of costs was discretionary with the chancellor; and although I might have exercised this discretionary power differently, it would be no reason with me, for reversing a decree in this particular. Moreover, the general rule on this subject is, that there can be no appeal or rehearing, for costs only. This was decided by Lord Thurlow, in the case of *Herdman* v. *Kent*, 1 Brown, C. C. 140. This was stated to be the rule by Mr. Romily, in the case of *Jenour* v. *Jenour*, 10 Ves. 572, and recognised by Lord Eldon, in the case of *Taylor* v. *Popham*, 15 Vesey, 72; subject, however, to certain exceptions, which it is unnecessary to enumerate, as the case under consideration does not come within those exceptions. As the chancellor, below, thought proper not to allow cost to the orator, and the case was one where it was purely with-

in his discretion whether to allow cost or not, and his
decree is not to be altered in any other particular, we do
not think that, consistently with the rules of equity as to
cost, on an appeal, the decree, in this particular should
be reversed.

The decree of the court of chancery must, therefore, be
affirmed.